**DE JOHN et al. v. ALASKA MATANUSKA COAL CO. et al.**

**AGOSTINO v. SAME.**

No. 5959.

Circuit Court of Appeals, Ninth Circuit.

June 20, 1930.

J. L. Waller and Jas. S. Truitt, both of Anchorage, Alaska (Wright & Wright, of Seattle, Wash., on the brief), for appellants De John and others.

Arthur G. Thompson, of Anchorage, Alaska, for appellant Agostino.

L. V. Ray, of Seward, Alaska, for appellee Alaska Matanuska Coal Co.

Harry F. Morton, of Anchorage, Alaska, for appellee Tarwater.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge.

This suit was brought by appellee Alaska Matanuska Coal Company to determine the right of possession to 320 acres of coal land constituting unit No. 1, Matanuska Coal Fields in Alaska. Title thereto is in the United States, but, under the Alaska Coal Leasing Act Oct. 20, 1914 (38 Stat. 741 [48 USCA § 432 et seq.]), the Secretary of the Interior had, on May 5, 1922, given to appellant Agostino a lease thereon, and subsequently, in 1927, assuming that the Matanuska Company had succeeded to Agostino's rights, he executed to it a new, consolidated lease covering this unit and other adjacent lands. For some time the property had been, and at the time the suit was instituted it was, in the actual possession of appellee Tarwater, as a receiver appointed by and acting under orders of the court in another proceeding. The receivership court, being desirous of winding up the administration, and being advised of conflicting claims touching the right of possession, granted leave to the Matanuska Company to bring suit against the receiver for the purpose of determining that question, and subsequently ordered in the several parties who were asserting adverse claims. Accordingly, Agostino appearing claimed the right to exclusive possession, and appellant De John and three associates, as partners under the firm name of the Premier Coal Mining Company, likewise appeared and set up a similar claim in their own behalf. In its final form, therefore, the suit became a three-party contest with the plaintiff Agostino and the Premier Company each asserting the right to exclusive possession, and with the receiver a mere stakeholder having no real interest. By the decree exclusive right of possession was adjudged to be in the plaintiff Alaska Matanuska Coal Company. Agostino and the Premier Company prosecute separate appeals.

It appears that on, or shortly prior to, December 8, 1921, Agostino, who is a citizen

of the United States, and hence a qualified lessee, made application for the lease which was later given him; and on that date he entered into an agreement with De John (whose citizenship does not appear) and four others, who were aliens, for prospecting and working the property in question; the association being designated as B. A. Moose Creek Coal Company. This company prosecuted work until the latter part of October, 1923, when, having fallen into financial difficulties, it was dissolved by mutual consent, and one of the associates withdrew from the enterprise. On October 31, 1923, three of the associates, namely, appellees Ruath, Colonello, and Colobuffalo, gave to De John a power of attorney authorizing him on their behalf to enter into a contract with Agostino for operating the property, and on the same day Agostino entered into a contract with De John agreeing to deliver to him possession of the property and authorizing him to operate it. De John and his associates in turn agreed to pay all the expenses of operation and to perform all of the obligations to the United States required by the lease to Agostino. And Agostino reserved for himself a one-fifth interest in the proceeds of the coal mined after certain expenses and other obligations were paid. Thereupon De John and his three associates above named entered into a partnership to be known as the Premier Coal Mining Company, for the purpose of operating the property. Agostino also gave to De John a power of attorney authorizing him to make all reports required by the Secretary of the Interior, in Agostino's name. As a result of these several agreements, Agostino had no direct part in working the property.

The Premier Company operated until approximately June 1, 1925, when, being in debt and unable to obtain further credit or to comply with the government lease to Agostino requiring payment of wages to all employees, arrangement was made with one Zulbert to do some work, and for a short period he operated the property. A short time later, namely, on June 12, 1925, two suits were brought by former employees of the Premier Company to collect for plaintiffs and their assignors amounts aggregating over $10,000, alleged to be due as wages on account of labor performed in working the property. The Premier Company appearing confessed judgment, and immediately thereupon the judgment creditors, together with all the members of the Premier Company, joined in an application for the appointment of a receiver alleging that the partnership was insolvent and unable to pay its debts. Agostino was not a party to either suit, and neither supported nor opposed the receivership. Granting the application, the court, on the 12th day of June, 1925, appointed a receiver who qualified and took possession of, and commenced operation of, the property. On the following day Agostino and the Matanuska Coal Company, both having knowledge of the receivership, entered into an agreement whereby, for a consideration, the former agreed to assign to the latter his lease, and pursuant to such agreement he did on that day execute and deliver to the company an instrument in due form making such assignment, with no condition other than that that it was subject to the approval of the Secretary of the Interior. In due time the Matanuska Company presented the assignment to the Secretary of the Interior, together with an application for a consolidated lease upon unit No. 1 and other adjacent lands, and, having approved the assignment, the Secretary of the Interior on the 19th day of February, 1927, executed and delivered to it such a lease, which the Matanuska Company still holds.

The receiver under the direction of the court continued to operate the property for approximately four years, but never until just shortly before he ceased operations did he realize sufficient money to pay expenses and any considerable portion of the debts of the Premier Company. Toward the end of his operations he received special consent of the government to draw certain pillars in the mine with which to fill a contract he had for furnishing coal to the Alaska Railroad, and as a result of this operation he finally obtained sufficient funds to pay at least a large portion of the Premier Company's debts after discharging the expenses of the receivership. Thereupon it appeared to the court that the assets in his hands were in danger of being lost if he continued operations, and accordingly he was directed to close the mine pending the determination of this action.

█ There is some contention here by Agostino that he is entitled to the funds, or a part of the funds, in the receiver's hands, but that question was not properly in issue in the trial court, was not there decided, and hence is not before us.

██ His contention that he is entitled to possession of the land on the termination of the receivership is necessarily predicated upon the assumption that the lease originally executed to him is in force and that he is the owner thereof. But he assigned it to the Matanuska Company, and by the Secretary of the Interior the assignment was approved

and a new lease executed to the company, which is outstanding. Considering the fact that the United States holds title to the land, its interest in any lease thereof, and the supervisory power of the Secretary of the Interior over all leases and all operations thereunder, we are unable to see how he could prevail even had he established his contention that the Matanuska Company failed to discharge certain obligations imposed on it by the contract pursuant to, and in connection with, which the assignment was delivered. But, however that may be, we find no reason for disturbing the findings of the court below to the effect that in respect of no condition precedent was the company in default. The position that the assignment was invalid or ineffective because at the time of its execution the property was in possession of a receiver is so devoid of merit that it need not be discussed. The assignment being valid and having been approved and acted upon by the Secretary of the Interior, Agostino is without interest in the property, and the judgment appealed from expressly reserves to him the right, if any he had, to sue the Matanuska Company upon its contract with him, for any obligation thereunder touching which it may be in default.

■ Of the several legal aspects of the Premier Company's status and its relation to the property, we need discuss but one. Its members have no interest except such, if any, as arises out of the contract made in their behalf with Agostino by De John. But, as the evidence conclusively shows, they did not, nor were they able to, perform their obligations thereunder. Both the statute and Agostino's lease with the government required that workmen be paid every two weeks and De John's agreement was to perform this obligation. In that respect at least he and his associates were grossly in default. Not only had they failed to pay their employees, but, when the receiver was appointed on June 12, 1925, they were insolvent, and, conceding their inability to perform, they joined in an application for, and procured the appointment of, a receiver, thus putting performance further beyond their power. They were thus jeopardizing Agostino's rights under the lease and imposing upon him the necessity either of performing their obligations or suffering the peril of having the lease forfeited. He was not bound longer to recognize the contract as being in force, and was clearly within his rights when, the day after the receiver was appointed, he impliedly terminated it by entering into the agreement with the Matanuska Company and assigning to it the

lease. If it be assumed that they were in actual possession when the receiver was appointed—a question which is not free from doubt—the court was not, on the termination of the receivership, bound for that reason alone to restore possession to them in face of the fact that they were then without right to or interest in the property or its possession.

Affirmed.